UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JOE WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 19-1250-JDT-cgc |
| ) | |
| QUALITY CORRECTIONAL HEALTH ) | |
| CARE, ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER TO MODIFY THE DOCKET,
GRANTING MOTION TO AMEND, DISMISSING CASE,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On December 16, 2019, the Court dismissed the original complaint filed by the *pro se* prisoner Plaintiff, Joe Watkins, and granted leave to file an amended complaint within twenty-one days. (ECF No. 10.) After being granted an extension of time, Watkins filed a timely amended complaint on January 21, 2020. (ECF No. 13.)[1] The amendment adds several Defendants. The Clerk therefore is directed to MODIFY the docket to include the following: John Mehr, the Sheriff of Madison County, Tennessee; Lieutenant Balderrama, an Administrator at the Madison County Criminal Justice Complex (CJC);[2] CJC Nurse Amy Franks; Grady Perry, Warden of the South

---

[1] Watkins titled his amended complaint a "Motion to Amend." The motion is GRANTED.

[2] Watkins spelled this Defendant's last name "Balderamma," but the correct spelling is Balderrama. *See Vestal v. Madison Cnty. Sheriff's Dep't, et al.*, No. 19-1188-JDT-cgc (W.D. Tenn.) (Answer of Def. Balderrama, ECF No. 22).

Central Correctional Facility (SCCF), where Watkins is currently incarcerated; Jammie Garner, SCCF Health Services Administrator; and Brenda Pevahouse, identified as "SCCF Grievance," presumably meaning Grievance Committee Chairperson or similar title. (*See* ECF No. 13 at PageID 39 & 41.)

The Court dismissed the original complaint because Watkins's allegations against "them" for inadequate medical care were insufficient to state a claim against any individual, and his requests for facility transfer and other injunctive relief were moot because he was no longer confined at the CJC. (*Id*. at PageID 30-31.) In the amended complaint, Watkins again alleges he was not provided with adequate medical care at the CJC and is not being provided medical care at the SCCF, [3] specifically with regard to his "tumor-removal-and-vulnerability." (*Id*. at PageID 39.) He alleges the Defendants delayed his needed MRIs, denied him his preferred medications, refused him proper medical facilities, and retaliated against him for filing medical-related grievances. (*Id*. at PageID 39-42.) However, the Court finds that, like his original complaint, Watkins's amended complaint under 42 U.S.C. § 1983 fails to state a claim for relief.

The legal standards for assessing the claims in an inmate's complaint were set forth in the prior order of dismissal, (ECF No. 10 at PageID 28-30), and will not be reiterated here.

First, Watkins concedes that neither Defendant Mehr nor Defendant Perry "commit[ted] the violations asserted" in the amended complaint. (ECF No. 13 at PageID 41.) Yet he asserts

---

[3] The SCCF is located in Wayne County, Tennessee. *See* www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility.html. The appropriate venue for any claims arising from Watkins's confinement at the SCCF is in the U.S. District Court for the Middle District of Tennessee, which encompasses Wayne County. *See* 28 U.S.C. § 123(b)(3). Because none of the allegations in the amended complaint state a claim for relief, the Court declines to sever and transfer the claims concerning the SCCF. However, if Watkins files any other complaints regarding events that occurred at the SCCF, they should be filed in the Middle District.

they can be liable for their failure to correct the alleged violations merely because of their supervisory authority respective positions as Sheriff and Warden.  (*Id.* at PageID 41-42.)  However, under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"  *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).  Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Watkins alleges that Defendants Mehr and Perry "had clear knowledge" of constitutional wrongs against him because of his grievances and letters.  (ECF No. 13 at PageID 42.)  However, as stated, failure to respond to grievances and complaints does not equate to "encourage[ment] [of]

3

the specific incident of misconduct" complained of, or his/her "direct[] participat[ion] in it." *Bellamy*, 729 F.2d at 421.  Nor do Watkins's generalized contentions demonstrate any party's implicit authorization, approval, or knowing acquiescence in offending subordinates' unconstitutional conduct.  *See id*.  He thus fails to state a supervisory liability claim for relief.

Watkins's primary claim is that the Defendants were deliberately indifferent to his serious medical needs in relation to medications, MRIs, "proper after-care," and his request to be transferred to a more appropriate medical prison facility.  (ECF No. 13 at PageID 39-40.)  As explained below, he fails to sufficiently allege a constitutional deprivation.

The Court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment."  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  That is, an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.  The objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*,

4

398 F.3d 868, 874 (6th Cir. 2005). The subjective component requires that jail officials acted with the requisite intent -- *i.e.*, -- had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Watkins states that he received the "wrong" medication, was denied an MRI for his "tumor-removal-and-vulnerability," and was not given "proper after-care." (ECF No. 13 at PageID 39.) He states that Defendants "delayed" his "prescription initially prescribed by an expert," but he does not identify the medication, its purpose, or how long it was delayed. (*See id.* at PageID 40.) He also does not state when or by whom his brain tumor was removed. His medical claim also appears internally inconsistent, inasmuch as he states that he "continues to be transported for MRI, provided proper medication, and treated properly." (*Id.*) But immediately thereafter, he asserts that "death is imminent . . . if treatment is continually delayed to[o] long." (*Id.*) Yet, he neither explains why death is imminent nor describes the treatment to which he refers.

The Court will presume for purposes of this order that removal of a brain tumor and post-surgical seizures such as Watkins alleges he is experiencing qualify as serious medical needs. However, he has not alleged that any CJC or SCCF personnel had a "sufficiently culpable state of

mind" and acted with "deliberate indifference" to his condition.  Instead, Watkins asserts only that the Defendants generally "were motivated by saving money instead of properly caring for him." (ECF No. 13 at PageID 39.)  This conclusory allegation does not satisfy the subjective prong of an Eighth Amendment claim.  The additional allegation that the facts "appear to show personal animosity toward [Watkins]" also is insufficient, without more, to show deliberate indifference. (*Id.*)

Watkins also contends the Defendants "substantial[ly] depart[ed] from accepted professional judgment," (*id*.), but he neither specifies what the "accepted professional judgment" was nor explains how any particular Defendant deviated from it.  His allegations about wait-times for MRIs, his personal medication preferences, his desire for "a more medically accommodating facility," and his "inability to sleep [due to] wrong medication [and] noisy living environment," (*see id*. at PageID 40 & 41) amount merely to disagreement about treatment.  Moreover, his displeasure with, for example, the "noisy living environment" in prison seems to be dissatisfaction with the normal incidents of prison living—which is not actionable.  *See Wilson*, 501 U.S. at 298 ("the Constitution does not mandate comfortable prisons"); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (same).

In sum, the amended pleading is devoid of facts suggesting that any named Defendant had a "sufficiently culpable state of mind" with regard to an alleged lack of medical care.  *See Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03; *Dominguez*, 555 F.3d at 550.  Allegations that the Defendants "did nothing to ensure Plaintiff was transported to a proper medical facility" and "denied Plaintiff's myriad requests for pain management medications," (ECF No. 13 at PageID 41 & 42), do not demonstrate any Defendant's subjective knowledge and disregard of an excessive risk of harm to Watkins's health.  Both the objective and subjective components of deliberate

6

indifference analysis must be present in order to state a claim. The allegations in the amended complaint are insufficient, and the amended complaint fails to state a claim for constitutionally inadequate medical care.

Watkins further alleges the Defendants' "actions are contrary to written TDOC, CCA[4] policy, Americans With Disabilities Act ("ADA"),[5] and Rehabilitation Act ("RA"),[6] as well as Tennessee law." (ECF No. 13 at PageID 40.) However, the only mentions of Tennessee law in the amended complaint are a few brief assertions that the Defendants acted negligently. (*E.g., id.* at PageID 39 ("Defendant's [sic] indifference and neglect"); *id.* at PageID 40 ("Defendant's [sic] are negligent and indifferent to Plaintiff's medical condition"); *id.* at PageID 41 ("increasingly deliberate indifference and increasingly negligent acts").) These passing references are in no way sufficient to state a claim for negligence under Tennessee law.

---

[4] CCA, or Corrections Corporation of America, is now known as CoreCivic. *See* Dave Boucher, CCA changes name to CoreCivic amid ongoing scrutiny, Tennessean, Oct. 28, 2016, www.tennessean.com/story/news/2016/10/28/cca-changes-name-amid-ongoing-scrutiny/92883274/. The company, a private prison management firm, operates the SCCF. *See* www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility.html.

[5] Title II of the Americans with Disabilities Act (ADA) is applicable to state and local government entities and their agencies and instrumentalities. 42 U.S.C. § 12131(1). To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under "services, programs, or activities of a public entity" solely because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 356-57 (6th Cir. 2015). The amended complaint does not expressly assert an ADA claim. However, to the extent Watkins intends to assert such a claim, he fails to do so. Even affording a liberal construction to the amended complaint, and construing all well-pleaded allegations in the light most favorable to him, the amended complaint's allegations are insufficient to raise an ADA claim against any Defendant.

[6] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, also applies to government agencies and incorporates the standards of the ADA. *See* 29 C.F.R. § 1614.203(b). Just as the amended complaint fails to state an ADA claim, it also fails to state a claim under the Rehabilitation Act.

Watkins does not identify any particular TDOC or CoreCivic policy that allegedly was violated.  Even if he did, allegations that prison officials failed to follow TDOC/CoreCivic administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)).  Section 1983 does not provide a remedy for violations of state laws or regulations.  *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate.").  *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).  Accordingly, Watkins does not have a constitutional right to SCCF's observance of any particular administrative policy.

Watkins also alleges he has been "denied discovery." (ECF No. 13 at PageID 40.)  The assertion is not entirely clear, but he contends the Defendants failed to respond to his letters and requests for assistance in obtaining his medical records "based on an unreasonable determination of the facts in light of the evidence presented" in his original complaint. (*Id.*)  Attached to the amended complaint are HIPAA release forms authorizing the CJC and the SCCF to provide Watkins's medical records to his sister, (ECF No. 13-2, App. A), and a Request for Production of

Medical Records and Documents ostensibly made pursuant to Federal Rule of Civil Procedure 34, (ECF No. 13-3, App. C).  To the extent Watkins claims he is entitled to discovery in connection with this case, however, his requests are premature; Defendants were not served with process and thus are not obligated to provide discovery.  Furthermore, even if the discovery process had commenced, the certificate of service on the discovery request in Appendix C does not show that it was sent to any Defendant; it states only that it was mailed to the Clerk of Court for the U.S. District Court for the Middle District of Tennessee.  (*Id.* at PageID 57.)

Watkins alleges the SCCF Defendants delayed his medical care in retaliation for filing grievances.  (ECF No. 13 at PageID 40; *see also* ECF No. 13-2 at PageID 54, App. B, Grievance.)  The Court reviews prisoner retaliation claims under the First Amendment.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution.").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims."  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Filing a grievance is protected conduct.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Watkins asserts generally that the "Defendants," collectively, retaliated against him for filing grievances, contending the Defendants took adverse actions against him because of that protected conduct. (ECF No. 13 at PageID 40.) However, the allegation is conclusory; Watkins does not actually identify any adverse action taken against him by any particular Defendant or explain the causal connection between that adverse action and the filing of any grievances. (*Id.*) Watkins's amended complaint therefore fails to state a claim for retaliation.

To the extent Watkins is asking the Court to order the Defendants to transfer him to a facility "better equipped to deal with his serious medical needs," (*id.* at PageID 41), the request is denied because this case is being dismissed.

In conclusion, the Court concludes that Watkins's amended complaint also fails to state a claim on which relief can be granted. Leave to further amend is DENIED, and this case is hereby DISMISSED with prejudice in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Pursuant to Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Watkins in this case would be taken in good faith. The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED that any appeal in this matter by Watkins would not be taken in good faith.

If Watkins nevertheless appeals the dismissal of this case, the certification that an appeal is not taken in good faith will not affect his ability to pay the $505 appellate filing fee using the installment procedures of the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific

procedures for implementing the PLRA.  Therefore, Watkins is instructed that if he files a notice of appeal and wishes to use the installment method for paying the appellate filing fee, he must comply with the PLRA and *McGore* by filing a new *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Watkins, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.  This strike shall take effect when judgment is entered.  *See Coleman v. Tollefson*, 575 U.S. 532, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE